ANGANU v. IMMIGRATION AND NATURALIZATION SERVICE Good morning, Your Honors. May it please the Court, Joseph Seguenza for Petitioner this morning. Petitioner submits two issues for the Court's consideration this morning. The first issue is whether Petitioner is statutorily asylum eligible, according to testimony and evidence produced at the individual hearing. And the second issue is whether Petitioner received a full and fair hearing according to due process requirements. Intertwined with that issue would be the sub-issue of proceeding without counsel on the day of the individual hearing. And the second sub-issue would be ineffective assistance of counsel. With respect to asylum eligibility, Petitioner would submit that the adverse credibility finding of the Court and the Court's decision that there was no corroborating evidence was not supported by substantial evidence. And if I may focus on three areas of testimony that the Court had concern with respect to the credibility finding. The first would be the Court's concern that on cross-examination, three different dates were presented to the Petitioner as to his first arrest. On cross-examination, Petitioner was asked when his first arrest occurred. Petitioner at that point corrected himself and indicated the right date for the first arrest and explained the inconsistency in his testimony with respect to the documents previously submitted by attributing it to poor memory and the fact that significant time had passed between the time of the incidents in question and his testimony in court. The second concern of the Court with respect to his testimony was the length of time that Petitioner was confined after his initial arrest in 1989. Again, at A.R. 108, Petitioner corrected himself, indicated the correct length of detention for that arrest, and attributed it to a slip of the memory and the length of time that had passed. At A.R. 109, the Court asked point blank why Petitioner had difficulty remembering the dates. Again, Petitioner testified that these incidents had happened some time ago, more than ten years ago, and it was a slip of the memory. There was a concern of the Court about an injury that Petitioner claims he sustained during one of these arrests, specifically a fracture of his little finger. At A.R. 111, Petitioner was confronted with a question based on his testimony, when did this injury occur on your first or second arrest? Petitioner corrected himself and indicated that it happened on his first arrest. We would submit that also the Court's concern about the lack of corroborative evidence was not sustained by the record. There were two supporting affidavits, one by Petitioner's uncle and one by a leader of the National Federation Party, of which Petitioner was a member, that clearly was unrefuted and established that Petitioner and his family had suffered persecution in Fiji. Petitioner would submit that he has established plausible explanation for the inconsistencies. We admit that there were some apparent inconsistencies on the record with respect to his testimony and supporting documentation. But when confronted with these inconsistencies, Petitioner sufficiently explained away and corrected these apparent inconsistencies on the record. We would submit that on that basis that Petitioner is statutorily eligible for asylum and has met his burden and has presented direct, specific and unrefuted testimony for an outright grant of asylum. The second issue would be whether Petitioner received a full and fair hearing. And this would be intertwined again with two sub-issues. Whether the Court compelling Petitioner to proceed without his attorney that particular day denied him of his right to counsel and whether there was ineffective assistance of counsel by the retained attorney not showing on that day and not meeting with Petitioner. We have in the record that he never actually sat down with his counsel to go over what the testimony would be and what the procedures would be. Yes, Your Honor. If that's accurate, if his counsel had appeared that day, what could he have done for him? Petitioner would submit that as he was, he had little or formal education, Your Honor, spoke little English and was inexperienced at courtroom procedure. And given those factors, we submit that the courts take scrupulous pains, if you will, to protect the rights of respondents in individual hearings. We would submit that the availability of counsel that day could have had a significant impact on the proceedings, the potential outcome of the proceedings. Namely, there was a lack of opportunity for redirect examination for counsel to rehabilitate or clean up, if you will, explain away any inconsistencies that respondent may have testified to or Petitioner may have testified to on direct examination. Lack of counsel deprived Petitioner of an opportunity to lay adequate foundation for any supporting documents, including the affidavits in question. That could have established in the court's mind that he had met the burden for asylum. Those two issues, I believe, Your Honor, were important in addition to the fact that I guess the last issue or the last point that I would like to raise would go more toward ineffective assistance of counsel. The lack of opportunity for Petitioner to meet with his attorney ahead of time and in anticipation of the hearing to prepare for the hearing, we submit, is very crucial to presentation of Petitioner's case at the hearing. Did he receive a full and fair hearing? In that regard, we submit no. He was forced to proceed without counsel, and it's of interest to note that the record does not show that he waived his right to counsel. In fact, the court didn't even inquire of Petitioner whether he wished to proceed without his counsel that day. Any suggestion that there were three prior opportunities or continuances of the case to obtain representation, we would submit are inaccurate. The record does not show what the reasons were for the three prior continuances. In fact, in point of fact, he had two attorneys prior to the individual hearing, and there is no record or evidence on the record as to why those three continuances were granted by the court, whether it was on the court's own motion or for what reason. So he did have attorneys at the time, or an attorney at the time of the individual hearing, but he was forced to go forward without an attorney. We submit that's prejudicial. And I'll reserve the last few minutes of my minute. That's fine. Thank you. May it please the Court. My name is Shelly Goode, and I represent the United States Attorney General. The Board's decision dismissing Mr. Anganew's appeal for... Second. You're the second lawyer to say that, but we have these captions as versus the INS. That's correct. Is this a new rule proceeding? No, it's not. This is actually a transitional rule case, but, however, since the Immigration and Naturalization Service does not exist anymore and is currently the Department of Homeland Security, the government... You should be representing the Secretary of Homeland Security, huh? Well, the government's position is that since in removal cases the proper respondent is the Attorney General. It's our position that in transitional rule cases the proper respondent is the Attorney General. Even though the old INS was merged into a new agency under the Homeland Security Department? Yes, that is correct. I believe the Seventh Circuit has held that the Attorney General is the proper respondent in such a case, in a case called... Just because he's the proper respondent in the new rule cases? Correct. All right. Go ahead. The Board's decision dismissing Mr. Anganew's appeal from the IJ's denial of his asylum application should be affirmed, first, because the adverse credibility determination is supported by substantial evidence, and, number two, because the lack of counsel at the immigration hearing didn't violate his statutory right to counsel or his due process rights. Moreover, his argument or his allegation that his previous counsel was ineffective was not exhausted, was not raised before the Board, and so this Court lacks jurisdiction to consider it. I believe that the inconsistencies in Mr. Anganew's asylum claim are readily apparent on the record, and if there are no questions regarding those inconsistencies... Are they material? Yes, they are. I believe that under this Court, the inconsistencies must go to the heart of the asylum claim, and in this case, the inconsistencies were with regard to two arrests, and two times he alleged he was arrested in Fiji, and those go to the heart of why he would fear persecution in the country, and his inconsistencies were... They're a matter of date? They're a matter of date, but we're not talking a number of days. We're talking years. In both of his asylum applications, the first and the second, he listed that or indicated that he was arrested twice, once in January 1989 and the second time in 1993. Now, during his testimony, he testified that he was only arrested twice and that he was arrested both times in 1993, so we're talking about a difference of four years. He also... Well, also inconsistencies regarding the duration of those arrests and his injuries, the injuries that he obtained or sustained from some. So there was one inconsistency, is that right? No, that's incorrect. Maybe I misunderstood you. I thought you said that he initially stated that he'd been arrested in 89 and 93. Yes. But it turned out later the statement was twice in 93. Exactly, and that's one inconsistency. He also, again, the duration of the arrests was inconsistent. In his asylum applications, he indicated that both of the arrests... During both of the arrests, he was detained for a matter of 15 days. Now, during testimony, he indicated that the arrests were three to four days. He also, during testimony, indicated that the injuries he sustained, including broken fingers, occurred after the second arrest. Or, excuse me, in testimony, he indicated that they occurred after the first arrest. In the asylum applications, he indicated that they occurred after the second arrest. If there are no further questions about the adverse credibility determination, I'll move to the right to counsel issue. The government submits that petitioner's due process rights were not violated because he has failed to establish prejudice, number one, and mainly Judge Fletcher's point that... Prejudice would be what? I mean, for example, in this kind of case? You would have to establish that not having an attorney present at the hearing caused him not to... Change the outcome? Exactly. And in this case, as Judge Fletcher pointed out, Mr. Ongine testified that he had never even consulted with his prior attorney. So I'm not sure how that attorney could have helped him on that day. Well, you're sort of saying it's no use having a lawyer because he would have been ineffective anyway. Is that what it amounts to? No, the government would not concede that. And he could have made that claim to the board if he had filed a motion to reopen presenting ineffective assistance to counsel, but he did not. And furthermore, even regarding that claim, he's failed to establish prejudice. Mr. Ongine has failed to establish in his brief to the board and in his brief to this court why his statements were inconsistent other than poor memory. He has not provided what we should believe when the arrest actually did occur. And absent any evidence of what portion we should believe, the court cannot presume prejudice. I guess we don't care if the arrest actually happened and he was actually injured. We don't care what the date was. Is that correct? Well, I don't think so. I think it's crucial on this point that he... This may go to whether they actually happened, but if they did happen, I don't think we care whether it was 89 or 93, do we? Well, I think it could go to if he were arrested the first time in 1989 and the second time in 1993, if those were believable dates, then the immigration judge could look to see whether the fact that the arrest occurred four years prior, whether that would go to a well-founded fear of persecution. So I think it is relevant and material to the finding. What is the government's view as to what an immigration judge should do when an alien appears without an attorney?  The immigration judge is required to advise them of their right to representation, which in this case the immigration judge did. And these cases, obviously, we have to look to the circumstances. We have to look to the facts and the circumstances of the case to determine. And in this case, we have to look to see how many continuances were obtained or how long the case has been proceeding. In this case, the master calendar hearing before the immigration judge was held on December 6, 1995. So the merits hearing was originally scheduled for August 22, 1996. And there were four, at least three, I believe four continuances that were obtained. So the case had been going on for three years before the individual hearing had been held. And there is evidence in the record that establishes Mr. Agnew's previous counsel filed a motion to recalendar to allow time for preparation at least on at least one of those occasions. So I think those would be factors to look to in determining what the immigration judge should do. I think there's a point in which you say how long can this proceeding go on. I think in this case, the immigration judge gave Mr. Agnew the right to obtain representation. I don't think that the case law establishes that the IJA is responsible to guarantee an alien right to counsel if the alien's counsel fails or refuses to appear at the hearing. It's not the government's view that it would be useful for an immigration judge to have somebody call up counsel to find out when the attorney was going to get there. It could. It just depends upon the facts of the case, I think. And here I think that the immigration judge wouldn't have that obligation. You know, his previous attorney knew about this date for months in advance. And so looking into all the factors, and in addition, knowing that Mr. Agnew admitted that he had never even consulted the attorney, his attorney, the immigration judge, might have thought, obviously, Mr. Agnew might be better off proceeding on his own. I mean, there's 50 pages of testimony. I think the immigration judge thoroughly discussed the asylum claim with Mr. Agnew. Yes. Good. If there are no further questions, the government will rest. No. All right. Thank you, Ms. Cohen. Thank you. Mr. Ciguenta, rebuttal. Thank you, Your Honor. Just two points briefly, if I may. One, I believe the Court's question as to what NIJ should do in the situation where a Respondent shows up without counsel when the Court is well aware that counsel is of record for Petitioner. I believe the Court's comment that a simple phone call to the attorney's office to determine where the attorney is and when he may show up is the least the Court could do to accommodate Petitioner. We submit that Petitioner showing up at court that day and finding out that his attorney was not there was a complete surprise to Petitioner. He had no – through no fault of Petitioner, he totally relied on the attorney to assist him that day, and his attorney wasn't there. We submit that the ineffective assistance of counsel by not showing up and not meeting with Petitioner ahead of time to prepare him for the hearing is apparent on the face of the record. The attorney in question was not yet an ex-member of the Bar. Is that correct? That's correct, Your Honor. But at the time of the filing of the brief with this Court, it's our understanding that that gentleman was no longer a member of the State Bar. In that sense, the motion to reopen we would submit would be moved in that situation. With respect to Your Honor's comment about dates and how important that is to this Court in terms of Petitioner's testimony in establishing eligibility for asylum, we would agree with the Court that the fact that Petitioner may be confused about when an arrest may or not have occurred or when an injury may or may not have been sustained is not the important point. The important point is whether Petitioner testified that these arrests did happen and providing sufficient details about the arrests and any injuries that might have been sustained, that we submit is important to this Court in determining credibility of a Petitioner for asylum. There was a gap. The hearing took place, what, five years after the arrests, something of that sort? I believe so, Your Honor, yes. And if there are no more questions, we'll submit it. All right. Thank you. We thank both counsel. This case is submitted for decision. The next case on the calendar has been submitted on the brief. So we move to the last case for argument on today's calendar.
judges: B Fletcher, Tashima, Pollak